In the

# United States Court of Appeals

## For the Seventh Circuit

No. 12-2685

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

SAUL RUELAS-VALDOVINOS,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Southern District of Illinois.
No. 11-CR-30046-02-MJR — **Michael J. Reagan**, *Judge.*

ARGUED MARCH 5, 2014 — DECIDED APRIL 7, 2014

Before EASTERBROOK, MANION, and HAMILTON, *Circuit Judges.*

HAMILTON, *Circuit Judge.* For nearly three years, appellant Saul Ruelas-Valdovinos supplied most of the cocaine that his 22 co-conspirators sold in southern Illinois and Missouri. He pleaded guilty to conspiring to distribute cocaine. When the district court calculated the sentencing guideline range, it applied a three-level upward adjustment for Ruelas-Valdovinos's role as a supervisor or manager in the conspiracy.

See U.S.S.G. § 3B1.1(b). Ruelas-Valdovinos challenges the adjustment on appeal, arguing that he supplied cocaine but did not supervise or manage anyone. We affirm.

From 2008 to 2011, Ruelas-Valdovinos obtained cocaine imported from Mexico and delivered it to a house in Chicago owned by Ivan Vazquez-Gonzalez. At Vazquez-Gonzalez's direction, other co-conspirators would pick up the cocaine, drive it south, sell it, and return to Chicago with the proceeds to pay Ruelas-Valdovinos. In 2010 Vazquez-Gonzalez prepared to go to Mexico for six months. He instructed Luis Hernandez-Barahono, a co-conspirator who primarily transported and distributed the cocaine, to work directly with Ruelas-Valdovinos.

Around that time law enforcement acted on a tip and stopped Hernandez-Barahono and another co-conspirator for a supposed traffic violation. The officers searched the vehicle and seized $205,000 in cash. Two later traffic stops also involving Hernandez-Barahono—one in July, the other in September—yielded $85,000 and $91,000. Hernandez-Barahono reported what happened to both Ruelas-Valdovinos and Vazquez-Gonzalez.

Ruelas-Valdovinos, however, suspected that the reported seizures were a ruse hatched by Hernandez-Barahono and Vazquez-Gonzalez to keep cash that he should have received. He questioned both of them in phone conversations. He threatened—if they were stealing from him—to kill them, to "close down the company there," or to replace some co-conspirators. Despite his suspicions, though, Ruelas-

Valdovinos gave Vazquez-Gonzalez the money he needed to return to the United States in November 2010.

A grand jury in the Southern District of Illinois returned a 28-count indictment against 23 co-conspirators, all of whom were arrested in 2011. Ruelas-Valdovinos pleaded guilty to conspiring to distribute cocaine and to possess cocaine with intent to distribute. See 21 U.S.C. §§ 846, 841(a)(1). The presentence report recommended a three-level upward adjustment to the Sentencing Guideline calculation on the ground that Ruelas-Valdovinos was a supervisor or manager. See U.S.S.G. § 3B1.1(b). Ruelas-Valdovinos objected, both in writing and at the sentencing hearing, that he was just a cocaine supplier who reported to his own supplier and did not supervise or manage anyone. The district judge rejected this argument, finding that Ruelas-Valdovinos had exercised control and "played [a] coordinating or organizing role."

The judge based his finding on transcripts of thirteen phone calls between Ruelas-Valdovinos and others (mostly Hernandez-Barahono); on Hernandez-Barahono's testimony that Ruelas-Valdovinos gave him orders during Vazquez-Gonzalez's absence; and on Ruelas-Valdovinos's threats to retaliate if his co-conspirators were stealing from him. The judge also applied a two-level upward adjustment for making credible threats of violence. See U.S.S.G. § 2D1.1(b)(2). After calculating a guideline imprisonment range of 235 to 293 months, the judge found that the multiple credible threats of violence warranted more than a two-point upward adjustment, so he imposed an above-guideline sentence of 327 months.

Ruelas-Valdovinos's sole contention on appeal is that the upward adjustment under § 3B1.1 was an error. In his view, the evidence showed only that he supplied cocaine, not that he had control over anyone. He points out that he had to pay his own supplier, who had fronted him the cocaine, and he insists that the phone conversations with Hernandez-Barahono and the threats he made to his co-conspirators were his way of checking on them and urging them to pay quickly.

Supplying drugs, by itself, does not warrant an upward adjustment under § 3B1.1. See *United States v. Weaver*, 716 F.3d 439, 444–45 (7th Cir. 2013); *United States v. Vargas*, 16 F.3d 155, 160 (7th Cir. 1994); *United States v. Brown*, 944 F.2d 1377, 1385–86 (7th Cir. 1991). Even though a supplier's relationship with co-conspirators may provide an opportunity to exercise control, see *Brown*, 944 F.2d at 1385–86, § 3B1.1 applies only if the supplier actually exercised control. See *Weaver*, 716 F.3d at 443–44; *Vargas*, 16 F.3d at 160. The upward adjustment under § 3B1.1 was properly applied if Ruelas-Valdovinos "help[ed] manage or supervise the criminal scheme." *United States v. Grigsby*, 692 F.3d 778, 790 (7th Cir. 2012); see also *United States v. Figueroa*, 682 F.3d 694, 697 (7th Cir. 2012) ("A supervisor, a manager, tells people what to do and determines whether they've done it."). We review *de novo* the district court's legal interpretation and application of the sentencing guidelines, but review factual findings only for clear error. *United States v. Medina*, 695 F.3d 702, 704 (7th Cir. 2012); *United States v. Tichenor*, 683 F.3d 358, 362 (7th Cir. 2012).

Ruelas-Valdovinos's argument that he did not exercise control is unpersuasive for two reasons. First, the district judge interpreted the phone calls with co-conspirators and various

threats against them as a form of supervision, going beyond merely supplying cocaine and urging prompt payment. That was a reasonable interpretation of the evidence. See *United States v. Bennett*, 708 F.3d 879, 892 (7th Cir. 2013) ("Although most supervisors do not terrorize their subordinates (at least not physically), administering sanctions for poor work quality is a quintessential supervisory task."); *Weaver*, 716 F.3d at 444 ("[T]he ability to coerce underlings is a key indicator of control or authority suggestive of managerial or supervisory responsibility in the criminal enterprise.").

Second, the record as a whole—including facts in the presentence report that Ruelas-Valdovinos did not dispute, see *United States v. Hawkins*, 480 F.3d 476, 477–78 (7th Cir. 2007); *United States v. Mustread*, 42 F.3d 1097, 1101–02 (7th Cir. 1994)—bolsters the conclusion that Ruelas-Valdovinos exercised control. Besides supplying the cocaine, following up with his co-conspirators, and threatening to kill or replace individual conspirators, he provided a van for transporting cocaine and even showed a co-conspirator the trap compartment in the van for hiding drugs. He also reported that he handled Vazquez-Gonzalez's work while Vazquez-Gonzalez was in Mexico; instructed a co-conspirator to open up Vazquez-Gonzalez's house when Hernandez-Barahono planned to be in Chicago; recruited a co-conspirator to join him if he decided to "visit" Hernandez-Barahono; and paid for Vazquez-Gonzalez's return to the United States. The district judge, who was intimately familiar with the conspiracy's facts from presiding over the proceedings for all 23 co-defendants, did not err by finding that Ruelas-Valdovinos was a supervisor or manager.

Moreover, even if we might have found an error in applying § 3B1.1, we would deem it harmless. The judge indicated that if the upward adjustment did not apply, he would have exercised his sentencing discretion to account for Ruelas-Valdovinos's role in the offense by applying a "departure of three levels" under Application Note 2 to § 3B1.1. The net effect on the sentence would have been the same. See, e.g., *United States v. Rabiu*, 721 F.3d 467, 470–71 (7th Cir. 2013) (finding guideline error harmless where district judge made similar statement).

AFFIRMED.