In the

# United States Court of Appeals
## For the Seventh Circuit

No. 14-2072

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

JASON DADE,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 12 CR 497-1 — **Sharon Johnson Coleman**, *Judge.*

ARGUED APRIL 28, 2015 — DECIDED JUNE 3, 2015

Before FLAUM, KANNE, and WILLIAMS, *Circuit Judges.*

FLAUM, *Circuit Judge.* Jason Dade, a former licensed real estate agent, pleaded guilty to one count of bank fraud, 18 U.S.C. § 1344, for his role in helping prospective real estate buyers assemble fraudulent mortgage loan applications. On appeal Dade challenges one aspect of his sentence: He contests the district court's decision to apply a 2-level upward adjustment for his aggravating role in the offense.

*See* U.S.S.G. § 3B1.1(c). Because the court did not clearly err in applying the adjustment, we affirm.

## I. Background

Over a four-year period, Dade, along with codefendants Cheryl Ware, Tiffini Chism, and Tamika Peters, carried out a mortgage-fraud scheme in which they facilitated bank loans to purchase residential real estate by knowingly providing lenders with false statements and documents. Dade referred potential buyers, including Peters, to Ware and Chism, who were loan officers. Dade provided Ware and Chism with false documents—including payroll stubs and W-2 forms from fake companies—so that unqualified buyers would be approved for loans. On one occasion Dade (with Chism's help) refinanced a mortgage on a property he owned in Chicago, Illinois. On his loan application Dade stated that he was paying monthly rent of $1,450 (he did not live in the house he was refinancing), and he backed up this claim with a rental verification from "Jireh Development Corp." Such entity did not exist, and Dade was actually renting from his mother-in-law for under $600 monthly. As a consequence of this representation on the loan application, Dade was able to receive a $156,000 loan from Fremont Investment & Loan.

Dade was charged with two counts of bank fraud, 18 U.S.C. § 1344, one count of wire fraud, *id.* § 1343, and two counts of mail fraud, *id.* § 1341. He pleaded guilty to one count of bank fraud based on the fraudulent refinancing of his property. In exchange the government dismissed the remaining four charges.

The government initially alerted Dade that it would seek a 2-level upward adjustment for his role as an organizer, leader, manager, or supervisor in the offense, *see* U.S.S.G. § 3B1.1(c). When preparing the presentence report, however, the probation officer concluded that a 4-level upward adjustment would be appropriate. According to the probation officer, the scheme had involved five or more participants (Dade, Chism, Ware, Peters, numerous buyers, and James Wilson, who provided the fake documents). In the probation officer's view, Dade had organized the scheme by obtaining false documents and referring buyers to Chism and Ware.

The government then adopted the probation officer's position. In support the government recounted its version of the facts underlying the charges dismissed as part of Dade's plea agreement. In Count Two (bank fraud) Chism had referred "Buyer A" to Dade for help in finding two investment properties. Dade encouraged Buyer A to acquire a third property, and Chism told Dade how much income Buyer A would need to qualify for another loan. Dade then provided Chism with fake pay stubs and an employment verification reflecting the necessary salary. In Count Three (wire fraud) Dade had referred Peters to Ware, who prepared a loan application using fake pay stubs provided by Dade. In Count Four (mail fraud) Dade had directed Peters to prepare a fake rent verification for "Buyer B." And in Count Five (mail fraud) Dade had refinanced another residence he owned by providing a loan officer with fake income tax returns and bank statements.

Dade objected to the application of § 3B1.1. Citing *United States v. Weaver*, 716 F.3d 439 (7th Cir. 2013), Dade argued that the upward adjustment is appropriate only if the defendant exercised authority, control, and ongoing supervision over others and, according to Dade, he did not. Dade argued that the government needed to show that he had the ability to coerce, reward, or punish members of the criminal enterprise; this requirement, he continued, was not met by the probation officer's assertion that he organized the offense by obtaining false documents and referring buyers to loan officers who prepared false applications.

The district court ultimately concluded that a 2-level upward adjustment would adequately account for Dade's role in the offense. Dade was "clearly a leader," the court concluded, but "as to the amount of coercion considering the roles of some of the other people involved," only a 2-level adjustment was warranted. With that adjustment, the court calculated a total offense level of 24 and criminal history category of I, yielding a guidelines imprisonment range of 51 to 63 months. The court then imposed a sentence of 20 months' imprisonment.

## II. Discussion

Despite Dade's below-guidelines sentence, which is less than half the low end of his guidelines range, he seeks review and thus risks receiving a less favorable sentence if successful on appeal. He principally contends that the district court's application of § 3B1.1(c) runs afoul of the standard that this court purportedly outlined in *Weaver.* In *Weaver* the government argued that the defendant, a

methamphetamine dealer, had exercised decision-making authority and control over customers who were fronted drugs and thus was a manager or supervisor under § 3B1.1(b). 716 F.3d at 440, 443. "For purposes of § 3B1.1," we clarified, "a defendant exercises control and authority over another when he 'tells people what to do and determines whether they've done it.'" *Id.* at 443 (quoting *United States v. Figueroa,* 682 F.3d 694, 697 (7th Cir. 2012)). Dade asserts that the information in his presentence report—that he organized the offense by obtaining false documents and referring buyers to the codefendant loan officers—does not establish "the type of coercion or control required by *Weaver.*"

We disagree with Dade's reading of *Weaver*. First, Dade interprets that decision to mean that an ability to coerce is essential to apply § 3B1.1, but *Weaver* notes that coercion is just one factor for the sentencing judge to consider in making an otherwise "commonsense judgment about the defendant's relative culpability given his status in the criminal hierarchy." 716 F.3d at 443–44. Second, Dade accepts that *Weaver* stands for the proposition that exercising control means being able to dole out a reward or punishment to inferiors, *see id.* at 444, and yet Dade ignores that he rewarded Ware and Chism with continued business that easily could have been withheld. In any event, *Weaver* does not limit the adjustment to situations where there had been a finding of control and coercion; that is just one measure. In addition to exercising control, a defendant also fits into one of § 3B1.1's aggravating roles if he was "responsible for organizing others for the purpose of carrying out the crime." *United States v. Rosen,* 726 F.3d 1017, 1025 (7th Cir. 2013) (internal quotation marks and citation

omitted); *see United States v. Vasquez*, 673 F.3d 680, 685 (7th Cir. 2012); *United States v. Knox*, 624 F.3d 865, 874 (7th Cir. 2010); *see also* U.S.S.G. § 3B1.1 app. n.4 (listing degree of control and authority as one of seven factors).

Dade has not argued that his conduct fell short of this alternative standard. The government advances that it was not clear error for the district court to apply the adjustment because Dade referred buyers to codefendants Chism and Ware, sometimes paid Ware, and provided these loan officers with the fake documents used in the loan applications. We agree with the government that the evidence shows that Dade "influence[d] the criminal activity by coordinating its members." *See United States v. Skoczen*, 405 F.3d 537, 550 (7th Cir. 2005) (internal quotation marks and citation omitted); *see also United States v. Robertson*, 662 F.3d 871, 877–78 (7th Cir. 2011) (concluding that § 3B1.1(c) was appropriately applied to defendants in mortgage-fraud scheme who provided buyers with money and fake documents and instructed them to lie about source of funds); *United States v. Watts*, 535 F.3d 650, 660 (7th Cir. 2008) (upholding district court's decision to apply § 3B1.1(c) based on defendant recruiting his wife into bank-fraud scheme). Thus, we conclude that the district court appropriately applied the 2-level upward adjustment.

### III. Conclusion

For the foregoing reasons, we AFFIRM the judgment of the district court.