NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued August 9, 2017
Decided August 15, 2017

**Before**

DANIEL A. MANION, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 16-1573

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. |
| *v.* | No. 12 C 695-1 |
| PABLO LOPEZ, *Defendant-Appellant*. | John J. Tharp, Jr., *Judge*. |

**O R D E R**

Pablo Lopez pleaded guilty to conspiring to distribute cocaine and received a 4-level upward adjustment to his offense level under U.S.S.G. § 3B1.1(a) for organizing or leading the conspiracy. He now appeals that adjustment. There was no clear error in imposing the 4-level adjustment, and we affirm.

Pablo Lopez was a cocaine distributor, primarily for Odell Givens, the leader of a large drug-trafficking organization. Lopez and his brother, Bacilio Lopez-Rios, first agreed to sell cocaine to Givens at the request of Maria Anguiano, who ran her own business as a "broker" between drug buyers and suppliers. At first, Anguiano and Lopez-Rios traveled together to sell cocaine to Givens—seven such transactions took

place. But in November 2011, the pair were stopped en route to a meeting with Givens, and law enforcement seized approximately 1.3 kilograms of cocaine from their car. After that, Anguiano was cut out of the deal and the brothers worked directly with Givens, selling him cocaine at least 17 more times between November 2011 and March 2012. On most occasions, Givens called Lopez to ask for one-half to two kilograms of cocaine, and Lopez negotiated a time and place for the transfer. Often Lopez coordinated drug deals between his brother and Givens, rather than meeting Givens himself.

After an investigation by the DEA and Chicago Police into Givens's drug-trafficking organization, the government filed a federal complaint, supported by the affidavit of an investigating officer, alleging Lopez's connection to that organization and describing the content of wiretapped conversations between the participants. Lopez was arrested pursuant to that complaint and charged with multiple counts of drug distribution and conspiracy.

Lopez submitted a plea declaration admitting to one count of conspiracy to distribute more than 5 kilograms of cocaine, 21 U.S.C. § 846, 841(a)(1), which carries a statutory minimum sentence of 10 years' imprisonment, *id*. § 841(b)(1)(A)(ii)(II). The probation officer who prepared Lopez's presentence report concluded that his total offense level was 33 and his criminal history category was I, making his guidelines imprisonment range 135 to 168 months. That offense level included a 4-level upward adjustment under U.S.S.G. § 3B1.1(a), which applies if a defendant was an "organizer or leader" of a conspiracy of 5 or more participants. (Without the adjustment, Lopez's guidelines sentence would be the statutory minimum of 120 months, because an offense level of 29 and a criminal history category of I results in a guidelines range lower than that minimum, *see* U.S.S.G. § 5G1.1(b).) Lopez contested the adjustment and sought a sentence below the statutory minimum under the "safety-valve" provision in U.S.S.G. § 5C1.2.

At sentencing, the district court found that Lopez qualified as an organizer or leader. The court relied on three categories of facts, gleaned primarily from the wiretap summaries. First, the court highlighted Lopez's course of dealing with the other participants, particularly Givens. Lopez, the court stated, made the "definitive decisions about how much cocaine was going to be available and when it was going to be available, and he was the one who had to address and deal with the potential problems that arose[.]" Lopez routinely set the location and told Givens whether to expect him or his brother to be there, and on various occasions offered to exchange poor-quality cocaine for better quality, confronted Givens about a payment that was short, and

"fronted" cocaine to Givens with the understanding that he'd pay for it later. Second, the court pointed to wiretapped conversations in which fellow conspirators deferred to Lopez's decision-making role in the organization. For instance, Lopez-Rios had said that he needed to contact Lopez before agreeing to sell cocaine to Givens; similarly, Anguiano had told Givens that Lopez had cut her out of the conspiracy, and that Givens would have to contact Lopez to arrange further cocaine purchases. Third, the district court stressed what it characterized as Lopez's managerial command in the aftermath of his brother's arrest. With the primary deliveryman no longer on hand, the court said, Lopez promptly "secured the services of other delivery people." "That is management," the court concluded, "that is organization. That is leadership in this conspiratorial effort."

The court sentenced Lopez to 126 months' imprisonment, which was below the guidelines range and only 6 months above the statutory minimum. The judge said he selected a sentence slightly above the statutory minimum because Lopez was more culpable than defendants who receive the minimum, and it was not necessary to sentence him within the guidelines range to make that point.

### Analysis

Lopez appeals, raising as the only issue his role as an "organizer or leader" of the conspiracy (he does not contest the number of participants). He argues primarily that the district court clearly erred by drawing the wrong inferences from the evidence. Rather than establishing his role as an organizer or leader, he says, the record shows that he merely was a drug distributor who worked with other independent agents. He argues, for example, that the court should not have concluded that he supervised his brother—the pair simply "shared responsibilities" (i.e., he arranged the deals, and his brother made the deliveries). He also disputes the finding that he "oversaw" all aspects of the conspiracy; his role in deciding the details of transactions—as with Givens—is consistent with that of a seller in a typical buyer-seller relationship, which is insufficient to trigger the leadership adjustment. Similarly, he maintains that Anguiano did not take directions from him, but rather ran her own business as a broker for drug deals. Finally Lopez emphasizes at length what the record *doesn't* show (i.e., evidence that he received a larger "share of the fruits of the crime" than other participants or that he recruited accomplices).

Lopez didn't just carry out drug deals himself—he arranged drug deals between other people, in this case his brother, Anguiano, and Givens. And his contention that he and his brother were equal business partners is belied by the evidence that Lopez unilaterally decided matters relating to the conspiracy—agreeing to "front" cocaine to

Givens on credit, confronting Givens about missing cash, and deciding who to do business with. This is quintessential "organizing" behavior that is sufficient to warrant the adjustment. *See United States v. Sullivan*, 765 F.3d 712, 719 (7th Cir. 2014) (noting that defendant may qualify for treatment under § 3B1.1(a) if "responsible for organizing others for the purpose of carrying out the crime"); *United States v. Dade*, 787 F.3d 1165, 1167 (7th Cir. 2015) (holding that "control" is not required for § 3B1.1); *United States v. Fox*, 548 F.3d 523, 530 (7th Cir. 2008) (upholding 2-level "organizer or leader" adjustment for defendant who used others to carry out drug deals). Ultimately, this case turns on this court's standard of review: "if two possible conclusions can be drawn from the evidence, then the choice between them cannot be clearly erroneous." *United States v. May*, 748 F.3d 758, 760 (7th Cir. 2014); *see also United States v. Leahy*, 464 F.3d 773, 799 (7th Cir. 2006).

Lopez's brief hints at another argument—that certain evidence relied upon by the district court contained factual discrepancies. First, he says, the district judge incorrectly said "it was Pablo Lopez" who decided to sell cocaine to Givens and to cut Anguiano out of the conspiracy, when in fact he *and his brother* made these decisions. (Anguiano and Givens, he notes, were recorded referring to the brothers as one unit, calling them by the pronouns "they" or "them" instead of "he" and "him.") Lopez also disputes the court's characterization that he "secured the services" of other couriers after his brother's arrest, when nothing in the record makes clear that Lopez used other couriers.

These factual discrepancies are harmless and do not require reversal. Whether the brothers were addressed as a singular unit or whether Lopez used other drug couriers does not call into question the other evidence—uncontested by Lopez—that he made business decisions and that he sent his brother to complete drug deals he arranged. There also was ample evidence of Lopez's organization and leadership that the district court did not rely upon but could have—for instance, the factual bases of his codefendants' plea agreements. *See United States v. Causey*, 748 F.3d 310, 321 (7th Cir. 2014) (noting that application of § 3B1.1 can be affirmed on "any grounds that are supported by the record"). Codefendants' plea agreements are reliable sources of information for sentencing, *see United States v. Austin*, 806 F.3d 425, 434 (7th Cir. 2015); *United States v. Grigsby*, 692 F.3d 778, 787 (7th Cir. 2012), and in this case Anguiano's and Lopez-Rios's plea agreements state that Lopez directed his brother, decided to sell cocaine to Givens, and cut Anguiano out of the conspiracy. The record supports the 4-level upward adjustment.

One final note of reassurance. In pronouncing the sentence, the district judge said that he would have imposed the same sentence even if he had not applied the adjustment. Thus, even if he incorrectly found Lopez to be an organizer or leader, that error is harmless. *See United States v. Minhas*, 850 F.3d 873, 879–80 (7th Cir. 2017) (upholding sentence despite possible error because district judge said that sentence fulfilled purposes of 18 U.S.C. § 3553(a)); *United States v. Ruelas-Valdovinos*, 747 F.3d 941, 944 (7th Cir. 2014) (upholding sentence where district court said same sentence would be imposed even without applying § 3B1.1).

Lopez's sentence is AFFIRMED.