In the

# United States Court of Appeals
## For the Seventh Circuit

---

No. 18-1233

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

GERALDO COLON,

*Defendant-Appellant.*

---

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:15-cr-80 — **Jane Magnus-Stinson**, *Chief Judge.*

---

ARGUED JANUARY 18, 2019 — DECIDED MARCH 22, 2019

---

Before EASTERBROOK, BARRETT, and SCUDDER, *Circuit Judges.*

SCUDDER, *Circuit Judge.* Geraldo Colon used his Indianapolis furniture store and a related business as a front to hide his more lucrative enterprise: buying large quantities of cocaine and heroin from Arizona and reselling the drugs to local dealers in Indiana. For his role as a middleman in this scheme, a grand jury charged Colon with drug conspiracy, money laundering, and making false statements in a bankruptcy

proceeding. Following two jury trials, Colon was convicted on all counts and sentenced to 30 years' imprisonment.

Colon challenges his convictions for money laundering, arguing that the government's evidence was insufficient. He also contends that the district court committed error in calculating his advisory sentencing range by applying leadership enhancements under § 3B1.1 of the Sentencing Guidelines. The leadership enhancement is inapplicable, as Colon sees the evidence, because, as an independent middleman, he did not oversee any participants. Neither challenge succeeds. We affirm Colon's money laundering convictions. And although we agree that the district court erred in applying leadership enhancements, a careful review of the sentencing transcript reveals that these errors were harmless.

**I**

Geraldo Colon worked as a middleman in an Arizona-to-Indiana drug trafficking scheme. Beginning in 2013, he purchased kilogram quantities of cocaine and heroin from a Phoenix-based drug trafficker, who dispatched couriers to deliver the shipments to Colon in Indianapolis. Colon then resold the drugs at higher prices to local dealers.

During this same period, Colon also operated a furniture store in a mall in Indianapolis. In February 2014, he took over the lease of the entire mall, which allowed him to rent space to other vendors. He formed YRG Enterprise Entertainment to operate the mall and opened a bank account in the name of the new business. But Colon never segregated the mall's lawful business from his narcotics trafficking: he instead coordinated the receipt and distribution of the Arizona drugs from the mall and, to disguise the drug money, deposited all

sources of income—funds from the mall and proceeds from his drug dealing—into the YRG business account.

Despite these efforts to conceal the scheme, in March 2016 a grand jury indicted Colon on charges of drug conspiracy, money laundering, and making false statements in a bankruptcy proceeding. Relevant to Colon's appeal of his money laundering convictions, the indictment in eight separate counts alleged violations of 18 U.S.C. § 1956(a)(1)(B)(i). The eight counts tracked eight deposits Colon made into the YRG Enterprise Entertainment bank account on seven different dates in July 2014. The deposits—mostly cash ranging from $1,200 to $8,293—totaled $44,293. The indictment alleged that each deposit included drug proceeds.

Colon proceeded to trial. While the jury found him guilty of the three false statement counts, it failed to reach a verdict on the drug trafficking and money laundering counts. A second trial then ensued. And the government again presented evidence from 2014 showing that Colon was buying and reselling hundreds of kilograms of cocaine and heroin—and that he used his business at the mall to receive the drugs and disguise the proceeds. The evidence also showed that, even though YRG Enterprise Entertainment operated in the red, cash deposits continued to flow into the company's bank account. Specifically, in July 2014, the month relevant to the eight money laundering counts at issue, Colon deposited nearly $20,000 more than the company received in revenue.

At the close of the government's case, Colon moved for a judgment of acquittal on the money laundering counts. He argued, as he does on appeal, that there was no way to tell which deposits in July 2014 involved drug money as opposed to revenue from the mall. The district court denied the

motion, finding that the government presented ample evidence from which an inference could be drawn that "there [was] insufficient cash to support the deposits" Colon made into the business account. The case then went to the jury, which convicted Colon of all remaining counts.

At sentencing the district court applied an aggravating role enhancement under U.S.S.G. § 3B1.1 on both the drug-trafficking counts and money laundering counts for the leadership role Colon played in committing those offenses. The court recognized that Colon had "somewhat of a unique role" in the drug operation and this differed from the typical scenarios the court had seen where someone "was a boss and had minions." But the leadership enhancement was nonetheless appropriate, as the court saw it, because of Colon's key role in the drug operation: he was the gateway through which large quantities of cocaine and heroin entered Indianapolis. The same reasoning led the court to impose a leadership enhancement on the money laundering counts. The resulting advisory guidelines range was life imprisonment, and the court sentenced Colon to 360 months.

## II

Colon renews his challenge to the sufficiency of the evidence on the eight money laundering counts, arguing that the government focused on the pattern of transactions in July 2014 but failed to produce specific evidence that each of the eight discrete transactions included drug proceeds. In assessing this claim, we view the evidence in the light most favorable to the government and ask whether a rational jury could have found that Colon committed the charged offenses. See *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

To sustain convictions for money laundering under § 1956(a)(1)(B)(i), the government had to prove that Colon engaged in financial transactions that involved drug trafficking proceeds and that he designed each transaction in whole or in part to disguise the nature or source of the funds. See *United States v. Jackson*, 983 F.2d 757, 765 (7th Cir. 1993). The parties agree that the government was not required to trace or tie the funds to a particular drug sale. See *United States v. Smith*, 223 F.3d 554, 576 (7th Cir. 2000). Nor did § 1956(a)(1)(B)(i) require the government to prove that each transaction involved only illegal proceeds. See *United States v. Rodriguez*, 53 F.3d 1439, 1447 n.13 (7th Cir. 1995); *Jackson*, 983 F.2d at 765. Instead, because drug dealers often comingle drug proceeds with legitimate funds, the government needed to establish that each of the transactions involved "some" illegal proceeds. See *Jackson*, 983 F.2d at 765.

In many money laundering prosecutions, the government meets its burden by focusing on a defendant's unexplained wealth and spending decisions, coupled with evidence that the purchases were designed to hide the source of illegal funds. Take, for example, *United States v. Jackson*, where we affirmed a money laundering conviction based on evidence that the defendant was selling cocaine, had "unexplained, substantial wealth," and paid for a Saab with cashier's checks from five different banks and thousands of dollars in cash. *Id.* at 766.

The Federal Reporter contains other examples of defendants charged and convicted of money laundering based on a similar evidentiary approach. See, *e.g., United States v. Messino*, 382 F.3d 704, 712–13 (7th Cir. 2004) (affirming money laundering conviction based on evidence

that the defendant engaged in an oral sale of land for cash with the cash installments being paid in amounts that avoided IRS reporting requirements); *United States v. Hall*, 434 F.3d 42, 54 (1st Cir. 2006) (affirming money laundering conviction in part because the evidence showed that the defendant "spent far in excess of his declared income" on home renovations); *United States v. Heater*, 63 F.3d 311, 319 (4th Cir. 1995) (affirming money laundering conviction based on evidence that the defendant's purchases, including real estate, a motorcycle, and an ATV, exceeded his lawful income); *United States v. Webster*, 960 F.2d 1301, 1308 (5th Cir. 1992) (holding that "[e]vidence of a differential between [a drug dealer's] legitimate income and cash outflow is sufficient for a money-laundering conviction, even when the defendant claims income from additional sources").

This case is different. The government did not focus on Colon's lifestyle or his spending habits by, for example, presenting evidence that he purchased houses or cars or by showing that he lived beyond his means. The government instead focused on money flowing into a bank account. The indictment charged Colon with eight counts of money laundering based on eight deposits into the YRG Enterprise Entertainment bank account in July 2014. And the government argued that, because the eight deposits in July 2014 totaled $44,293 and Colon's mall business earned only $25,073 that same month, some of the deposited cash must have been drug proceeds.

Viewing the evidence in the light most favorable to the government, we conclude that the trial record contained sufficient evidence to support each of the money laundering convictions. The jury heard overwhelming evidence of Colon's

drug dealing: he bought and resold hundreds of kilograms of heroin and cocaine, with many transactions taking place at the mall. Both his drug sales and the mall generated cash income, but the jury heard evidence that only his drug business was profitable. In February 2014, the month Colon purchased the rights to operate the business, the mall was barely breaking even. Its financial situation deteriorated even further after Colon took over, and a subsequent financial investigation revealed that the expenses of YRG Enterprise Entertainment substantially outpaced the company's revenue. Throughout the relevant period, however, the corporate bank account remained funded. In July 2014, the month relevant to the money laundering counts, the business grossed only $25,073, yet the eight deposits into the YRG account, the majority of which were cash, totaled $44,293. All of this evidence allowed the jury to conclude that Colon used his narcotics trafficking to keep the mall afloat.

There is more. Given the scope of Colon's drug operation—coupled with evidence of the mall's financial distress—a reasonable jury could conclude that he used the mall as a front to facilitate and disguise his drug trafficking activities, with the two businesses being so intertwined as to erase any meaningful distinction between the two. Colon operated the mall and conducted drug transactions at the same location; both generated cash; and he regularly dispatched employees from the mall and his furniture store to make cash deposits into the mall's bank account. The government supplied ample evidence to allow the jury to rely on the difference between Colon's mall income and bank deposits to infer that he commingled his drug proceeds with funds from the mall as he was operating both businesses. The jury was on equally solid ground inferring that the cash

deposits contained comingled funds—mall and drug proceeds alike. See *United States v. Jackson*, 935 F.2d 832, 840–41 (7th Cir. 1991) (affirming conviction in part because the defendant "made bank deposits equal to approximately twice the amount that could be accounted for out of legitimate sources of income"); see also *Webster*, 960 F.2d at 1308 (employing similar reasoning).

Colon urges a different reading of the evidence. While conceding that he deposited more money into the YRG Enterprise Entertainment account than the business earned, he contends that the government failed to produce evidence that any of the eight discrete transactions involved any drug proceeds. While Colon is right that the government must prove each count beyond a reasonable doubt, he overlooks that the law allows the proof to come in the form of direct or circumstantial evidence (or both). Even more to the point, "there is nothing wrong with circumstantial evidence of guilt." *United States v. Memar*, 906 F.3d 652, 656 (7th Cir. 2018). A jury "is entitled to employ common sense in making reasonable inferences from circumstantial evidence." *United States v. Starks*, 309 F.3d 1017, 1021–22 (7th Cir. 2002); see also *Memar*, 906 F.3d at 656 ("While a verdict based on speculation cannot stand, one premised on reasonable inferences is sound."). The government's proof, therefore, "need not exclude every reasonable hypothesis of innocence so long as the total evidence permits a conclusion of guilt beyond a reasonable doubt"—and the jury, as the trier of fact, "is free to choose among various reasonable constructions of the evidence." *Starks*, 309 F.3d at 1022.

On the evidence presented at trial, we conclude that a reasonable jury could have inferred from the differential between

Colon's mall income and drug proceeds, the scope of his drug operation, his comingling of drug and mall proceeds, and the overwhelming evidence showing that the mall was merely a front to enable and conceal his drug trafficking activities, that Colon was laundering money in July 2014, and that each cash deposit included at least some drug proceeds.

**III**

Colon next contends that the district court erred in applying leadership enhancements under U.S.S.G. § 3B1.1 when determining his advisory guidelines range. The district court applied a four-level enhancement (U.S.S.G. § 3B1.1(a)) to the drug-trafficking counts for Colon's role as an organizer or leader in the drug-trafficking operation, and a two-level enhancement (U.S.S.G. § 3B1.1(c)) to the money laundering counts for Colon's aggravating role in that operation. This aggravating role increased Colon's total offense level and, in turn, his advisory sentencing range.

At sentencing the district court was quick to recognize that Colon's leadership role in the drug-trafficking scheme was atypical—it was not, the court explained, an ordinary situation in which Colon "was a boss and had minions." But the court found that the enhancement was warranted because Colon was a "central figure" through which "huge quantities" of drugs entered Indianapolis from Arizona. The court also noted that, on multiple occasions, Colon directed the Phoenix-based couriers on how and where to make their deliveries. On this score, the record reveals that on several occasions Colon requested that one of the couriers drive him to the residence of a local dealer to deliver drugs. And on another occasion, Colon instructed a different courier to place the drugs inside one of the appliances at his furniture store,

with Colon then wheeling the appliance off the showroom floor.

While we agree that these facts make clear that Colon received and sold large quantities of drugs and sometimes negotiated the terms of their sale by directing others, we cannot conclude that these facts support an aggravating role adjustment.

The law requires a sentencing court to find by a preponderance that the facts support a sentencing enhancement. See *United States v. Tanner*, 628 F.3d 890, 907 (7th Cir. 2010). An aggravating role adjustment under § 3B1.1 increases the offense level of defendants who organize, lead, manage, or supervise a criminal enterprise to reflect their greater contributions to the illegal scheme. See *United States v. Brown*, 944 F.2d 1377, 1381 (7th Cir. 1991). Where a crime involves five or more participants or is "otherwise extensive," a defendant receives a four-level enhancement if he is an "organizer or leader" of the scheme, and a three-level enhancement if he is a "manager or supervisor." U.S.S.G. § 3B1.1(a)–(b). Defendants that serve as organizers, leaders, managers, or supervisors in smaller or less extensive criminal enterprises receive a two-level enhancement. U.S.S.G. § 3B1.1(c).

While the guidelines do not define these terms, the accompanying commentary provides factors for courts to use in distinguishing a leadership and organizational role from one of management and supervision. See U.S.S.G. § 3B1.1 n.4; see also *United States v. House*, 883 F.3d 720, 723–24 (7th Cir. 2018) (explaining that these factors also help in determining whether any enhancement applies at all). These factors include the exercise of decision-making authority, the nature of the defendant's participation, the recruitment of accomplices,

the share of the fruits of the crime, the degree of participation in planning or organizing, the nature and scope of the crime, and the degree of control or authority exercised over others. U.S.S.G. § 3B1.1 n.4. In the end, whether an enhancement is warranted (and what level) requires a practical inquiry, with the district court making a "commonsense judgment about the defendant's relative culpability given his status in the criminal hierarchy." *House*, 883 F.3d at 724 (quoting *United States v. Dade*, 787 F.3d 1165, 1167 (7th Cir. 2015)).

Our caselaw is not a model of precision when it comes to informing whether a defendant qualifies as an organizer or leader or instead as a manger or supervisor. Perhaps the lack of clear guidance is the product of the guidelines not defining the pertinent terms and otherwise shedding little light on the relative distinctions. Or perhaps prior cases have not presented facts requiring a clear articulation of the difference between organizing and leading on the one hand and managing and supervising on the other.

Regardless, what is clear from the text and structure of § 3B1.1 is that distinctions exist and are matters of degree: an organizer or leader exercises more decision-making and leadership authority, participates to a larger extent in the planning or organizing of the offense, and exerts a greater degree of control over others than does a manager or supervisor. See U.S.S.G. § 3B1.1 n.4. While this case does not require us to go further, we underscore that the application of any enhancement under § 3B1.1 requires a showing that a defendant engaged in affirmative acts of organizing, leading, supervising, or managing that indicate his greater relative culpability in the offense than others involved.

On past occasions we have considered whether someone who acts as an intermediary or middleman—as Colon did here—should receive a leadership enhancement. In doing so, we have emphasized that "middleman status alone cannot support a finding that a defendant was a supervisor, manager or leader of a criminal activity." *Brown*, 944 F.2d at 1382. Instead, an aggravating role adjustment is appropriate for a middleman only when coupled with other facts indicating the defendant exercised some control over others involved in the crime or was responsible for organizing others in carrying out the operation. *Id.* at 1381. So, too, have we recognized that "[s]upplying drugs and negotiating the terms of their sale do not by themselves justify a Section 3B1.1 increase." *United States v. Weaver*, 716 F.3d 439, 444 (7th Cir. 2013) (quoting *United States v. Vargas*, 16 F.3d 155, 160 (7th Cir. 1994)). These actions alone do not indicate that the middleman had any greater degree of responsibility for orchestrating the transactions "than anyone else involved, including the customer." *Id.*

Rather, in determining whether a middleman should receive a leadership enhancement, the right focus is on the defendant's relative role within the criminal enterprise and the control he exercised over other participants in the operation. See *United States v. Howell*, 527 F.3d 646, 649 (7th Cir. 2008). A defendant who acts as a mere conduit in an operation—even one that deals in large quantities of drugs—should not (without more) receive a leadership enhancement. See, *e.g.*, *Weaver*, 716 F.3d at 444 (concluding that a middleman who fronted drugs to dealers and urged them to sell quickly did not qualify for the leadership enhancement because these actions did not indicate he had any greater degree of responsibility in the operation than anyone else); see also *Brown*, 944 F.2d at 1381 (concluding that a leadership enhancement was not

warranted where the middleman did not exercise any control over the customers to whom he sold drugs, receive a larger cut of the profits, or recruit dealers to work for him).

Do not read us to say that a middleman can never receive a leadership enhancement. An enhancement is indeed warranted for a middleman who plays a meaningful role in structuring or overseeing a drug operation. See, *e.g.*, *United States v. Vallar*, 635 F.3d 271, 281 (7th Cir. 2011) (concluding that the enhancement was warranted for a mid-level figure in a drug conspiracy who took part in the planning of the offense, was entrusted with substantial sums of money, and oversaw the receipt of drugs by others in the conspiracy); *Howell*, 527 F.3d at 650–51 (concluding that the enhancement was warranted where the middleman exerted influence over his customers and planned trips to conduct drug deals).

At the very least, for any leadership enhancement to apply, the district court must identify instances where the defendant orchestrated or oversaw the drug operation and those involved in it. In the language of § 3B1.1, the record must contain facts showing that the defendant organized, led, managed, or supervised the criminal activity.

These facts are not present on the record before us. Consider, for instance, Colon's requests that a courier drive him to the residence of a local dealer to complete a drug sale. With no indication that the courier was required to comply or that Colon exercised ongoing supervision over the courier, this evidence is more consistent with a supplier accommodating the needs of his customer than an organizer controlling a drug operation. See *Weaver*, 716 F.3d at 444 ("[T]he enhancement requires ongoing supervision, not a one-off request from one equal to another during the course of the criminal activity.").

In short, the record reveals only that Colon dealt in large quantities of drugs and occasionally made requests about the terms and locations of drug deliveries. These facts, accurate though they may be as a descriptive matter, do not suffice to show that Colon acted as a manager or supervisor, much less an organizer or leader.

To be sure, the district court was right to emphasize the gravity and scale of Colon's drug-dealing in the Indianapolis community. But these facts, while certainly relevant in the consideration of a proper sentence when applying the statutory factors in 18 U.S.C. § 3553(a), do not themselves prove that a leadership enhancement is warranted under § 3B1.1. The quantity of drugs at issue, standing alone, does not answer the question of what role the defendant played in a criminal organization. See *Brown*, 944 F.2d at 1381–82. The guidelines already make quantity relevant to the determination of a defendant's base offense level; allowing large drug quantities to then require the addition of an aggravating role adjustment fails to give effect to the separate leadership finding required by § 3B1.1. To allow a leadership enhancement to stand on the present record would permit its application in all cases involving large-scale drug dealers.

We reach the same conclusion on the application of the leadership enhancement to the money laundering counts. In finding that the facts supported a two-level enhancement, the district court relied primarily upon the same evidence presented for the enhancement on the drug counts. Yet the government presented no evidence that anyone but Colon qualified as a participant under § 3B1.1 in the money laundering scheme, rendering the application of the leadership enhancement improper on this factual record.

Accordingly, the district court erred in applying the leadership enhancement to the drug and money laundering counts. But we also conclude that the errors were harmless because the sentencing transcript, read as a whole, demonstrates that the district court would have imposed the same 30-year sentence regardless of the enhancements. See *United States v. Clark*, 906 F.3d 667, 671 (7th Cir. 2018), cert. denied, 139 S. Ct. 852 (2019).

After calculating the advisory guidelines range, the district court proceeded to assess the statutory sentencing factors and expressly stated that Colon's sentence was "not based on the guidelines but on the 3553(a) factors." The district court then went on to explain why a 30-year sentence was appropriate irrespective of the guidelines calculation, which included the leadership enhancements. The district judge emphasized the large scale of Colon's drug dealing and its impact on the Indianapolis community. She also pointed out Colon's utter disregard for the law, as evidenced by duration of his narcotics trafficking and his continuing to do so after others in the scheme were arrested, allowing drugs to continue to flow into the community. In the district court's view, the fact that Colon continued dealing following these arrests, "in a more impactful way than even the guideline calculation, point[ed] to the leadership role of Mr. Colon."

In all of these observations the district judge made clear that a 30-year sentence was appropriate regardless of the guidelines calculation due to Colon's prominent role as a wholesale distributor of hundreds of kilograms of heroin and cocaine, and the resulting harm to the community. This record allows us to conclude that the errors in the advisory guidelines range were harmless. We therefore can avoid the

unnecessary step of returning this case to the district court for resentencing. See *United States v. Abbas*, 560 F.3d 660, 667 (7th Cir. 2009).

For these reasons, we AFFIRM.