In the

# United States Court of Appeals
## For the Seventh Circuit

No. 24-1650

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

DEON PUGH,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 18-CR-157-4 — **Andrea R. Wood**, *Judge.*

ARGUED APRIL 9, 2025 — DECIDED AUGUST 13, 2025

Before EASTERBROOK, JACKSON-AKIWUMI, and PRYOR, *Circuit Judges.*

PRYOR, *Circuit Judge.* Following a bench trial, the district court convicted Deon Pugh of four counts, including conspiracy to distribute a controlled substance. After calculating the applicable guidelines range at 360 months' imprisonment to life, the district court imposed a sentence of 216 months' imprisonment followed by five years of supervised release.

Pugh challenges the district court's decisions at sentencing to (1) designate him as a career offender; (2) attribute to him a drug quantity of over 1,000 grams of heroin; and (3) apply a four-level leadership enhancement. For the reasons below, we affirm.

## I.  BACKGROUND

The government charged Pugh by superseding information with four counts, including conspiracy to knowingly and intentionally possess with intent to distribute and distribute a controlled substance in violation of 21 U.S.C. §§ 841(a)(1) and 846 (Count I); knowingly and intentionally distributing a controlled substance in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 (Counts II and III); and possession of a firearm as a felon in violation of 18 U.S.C. § 922(g)(1) (Count IV). The superseding information alleged that from late 2017 through early 2018, Pugh and eight co-defendants conspired to distribute illegal drugs from the home of Jonathan Mason, who the parties agree served as a leader of the conspiracy. After Pugh waived his right to a jury trial, the case proceeded to a bench trial pursuant to Rule 23 of the Federal Rules of Criminal Procedure. The district court found Pugh guilty on all counts.

In relation to the conspiracy charge, the only conviction at issue on appeal, the district judge concluded that the government had proven beyond a reasonable doubt that Pugh participated in a conspiracy with, "at a minimum," six other individuals between September 2017 and March 2018. The district court also concluded that the conspiracy's possession and distribution of more than 1,000 grams of heroin was reasonably foreseeable to Pugh as a co-conspirator. In reaching its verdict on this count, the district court found the testimony of co-conspirator Derrick Wiltz credible, noting that Wiltz's

statements were corroborated by additional evidence presented at trial by the government including testimony from a Federal Bureau of Investigation agent specializing in drug operations, Special Agent Culloton; pictures of drug production materials; Pugh's own correspondence; and drugs seized from Mason's home. As the district court recounted, the evidence established that Mason's home served as the center of the conspiracy's drug activity; Pugh visited Mason's home almost daily beginning in September 2017; Pugh would bring drugs, including heroin, to Mason's home and prepare the drugs for sale; and Pugh directed Wiltz to deliver repackaged drugs to customers. The district court further observed that the relationship between Pugh and Mason was akin to that of a "joint venture."

After the district court denied Pugh's motion for judgment of acquittal under Federal Rule of Criminal Procedure 29, and his alternative request for a new trial under Rule 33, the case proceeded to sentencing.

Before sentencing, the United States Probation Office prepared a Presentence Investigation Report ("PSR"). The probation officer who prepared the PSR calculated an offense level of 38, based on a converted drug weight of approximately 15,774.12 kilograms and a four-level enhancement for Pugh being an organizer or leader in the drug conspiracy. *See* U.S.S.G. §§ 2D1.1, 3B1.1. The probation officer also calculated that Pugh had accumulated 13 criminal history points and was a career offender, both resulting in a criminal history category of VI. *See* U.S.S.G. § 4B1.1(b). The PSR concluded that Pugh's criminal history and present conviction yielded an advisory guideline range of 360 months to life imprisonment on the conspiracy conviction.

At sentencing in April 2024, the district court discussed the PSR with the parties. Deviating from the probation officer's drug quantity findings, the district court calculated a base offense level of 30 by attributing to Pugh a converted drug weight of 2,274.12 kilograms, which, relevant to this appeal, included approximately 2,236.6 grams of heroin (representing a converted drug weight of 2,236.60 kilograms). The district court then applied a four-level aggravating role enhancement upon concluding that Pugh held a leadership or organizing role in the conspiracy, thereby raising Pugh's offense level to 34. *See* U.S.S.G. § 3B1.1(a). Finally, the court designated Pugh as a career offender under the Sentencing Guidelines, raising his offense level to 37 with a criminal history category of VI. *See* U.S.S.G. § 4B1.1. The court calculated Pugh's final advisory guidelines range at 360 months to life. The court sentenced Pugh to 216 months' imprisonment with five years of supervised release on April 9, 2024.

## II.    DISCUSSION

Pugh argues the district court erred in three respects at sentencing. First, by designating him as a career offender. Second, by attributing to him a drug quantity of over 1,000 grams of heroin. And third, by applying a four-level leadership enhancement.

### A. Career-Offender Designation

"A defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence

or a controlled substance offense." U.S.S.G § 4B1.1(a). Pugh's challenge focuses on whether the term "controlled substance offense" encompasses inchoate offenses such as conspiracy, of which he was convicted.

Pugh acknowledges that the Sentencing Guidelines were amended in November 2023 to expressly provide that a "controlled substance offense" includes inchoate offenses such as conspiracy. *See* U.S.S.G. § 4B1.2(d). Accordingly, Pugh concedes that the version of the Guidelines in effect during his sentencing in April 2024 warranted finding him a career offender. However, Pugh urges that the sentencing judge should have applied the Guidelines in effect when he committed his offense in 2017 and 2018, which would not have warranted the career-offender designation. He maintains that applying the harsher Guidelines adopted after he engaged in the conspiracy violated the Constitution's *Ex Post Facto* Clause, U.S. CONST. art I, § 9, cl. 3. *See United States v. Vasquez-Abarca*, 946 F.3d 990, 994 (7th Cir. 2020). An "*ex post facto* violation" occurs "when a defendant is sentenced under Guidelines promulgated after he committed his criminal acts and the new version provides a higher applicable Guidelines sentencing range than the version in place at the time of the offense." *Peugh v. United States*, 569 U.S. 530, 533 (2013).

The problem with Pugh's position is that he does not show that the 2023 amendment to § 4B1.2 adversely affected him. *See United States v. Vallone*, 752 F.3d 690, 694 (7th Cir. 2014). Rather, under the law of our circuit, Pugh's career-offender designation was appropriate even before the 2023 amendment given our deference to the Sentencing Commission's commentary in Application Note 1 to § 4B1.2, which instructed that the term "controlled substance offense"

included "aiding and abetting, conspiring, and attempting to commit such offenses." *United States v. White*, 97 F.4th 532, 537 (7th Cir. 2024).

Pugh asks us to revisit this deference. He reasons that the Supreme Court's decision in *Stinson v. United States*, 508 U.S. 36 (1993), which served as the source of our deference to Application Note 1, should no longer be viewed as good law. *Stinson* held that the Sentencing Commission's commentary "is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline." 508 U.S. at 38. In Pugh's view, *Stinson* should be found overruled by *Kisor v. Wilkie*, 588 U.S. 558 (2019), in which case Pugh's conviction for conduct in 2017 and 2018 would not have qualified as a controlled substance offense under the version of § 4B1.2 in effect at that time.

Pugh's argument cannot succeed. We recently held that our deference to Application Note 1 remains on solid ground because "*Kisor* did not unsettle *Stinson*." *White*, 97 F.4th at 539. As we explained, although *Kisor* did "reduce[] the level of deference afforded to an agency's interpretation of its own regulations," *Kisor* did not address the deference we afford to the Sentencing Commission, which "is not an executive agency" but instead "an independent commission within the judicial branch." *Id.* at 538–39. Absent a "compelling reason" to overrule this precedent, we cannot find Pugh's career offender designation erroneous. *Id.* at 538. Accordingly, we reject Pugh's position that his career-offender designation represents an *ex post facto* violation.

**B. Drug Quantity**

Pugh also challenges the district court's calculation of his base offense level as 30 on the basis that the calculation improperly attributed to him over 1,000 grams of heroin. *See* U.S.S.G. § 2D1.1(a)(3), (c)(5). The government argues Pugh waived this challenge.

We agree with the government and find the challenge waived. A defendant waives an argument that a sentencing decision was erroneous when, before the district court, his lawyer argued in favor of the sentencing decision that the defendant seeks to challenge on appeal. *United States v. Nichols*, 789 F.3d 795, 796 (7th Cir. 2015). That is what happened here. Pugh urged in his sentencing memorandum and in a supplemental sentencing memorandum that the proper base guideline level should be 30, based on a drug quantity of approximately 2,236 grams of heroin.[1] For example, he asked the district court to "not deviate" from its finding "that Mr. Pugh trafficked in 2,236 grams of heroin" and represented that 2,236 "is the amount Mr. Pugh should be held accountable for transacting." Because Pugh expressed clear intent to not only forgo a challenge to the 2,236-gram attribution, but to advocate for that attribution, Pugh waived any challenge to the attribution on appeal. *See id*.

**C. Leadership Enhancement**

Pugh's remaining argument takes issue with the district court's application of a four-level leadership enhancement,

---

[1] (Dkt. 1006, Sentencing Mem., at 4, 6); (Dkt. 1052-1, Supp. Sentencing Mem., at 3–4, 6).

which raised his offense level from 30 to 34. *See* U.S.S.G. § 3B1.1(a).

A four-level enhancement applies to a defendant who "was an organizer or leader of a criminal activity that involved five or more participants." U.S.S.G. § 3B1.1(a). In contrast, a defendant who "was a manager or supervisor" receives an increase of three levels. U.S.S.G. § 3B1.1(b). Distinctions between these enhancements are "matters of degree," with "an organizer or leader exercis[ing] more decision-making and leadership authority, participat[ing] to a larger extent in the planning or organizing of the offense, and exert[ing] a greater degree of control over others." *United States v. Colon*, 919 F.3d 510, 518 (7th Cir. 2019).

Relevant factors to consider in deciding whether to apply a leader or organizer enhancement versus a manager or supervisor enhancement include the "exercise of decision-making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others." U.S.S.G. § 3B1.1, cmt. n.4. This list is not exhaustive, and no factor is a prerequisite. *United States v. House*, 883 F.3d 720, 724 (7th Cir. 2018); *United States v. Mankiewicz*, 122 F.3d 399, 406 (7th Cir. 1997). Rather, "the primary goal in applying § 3B1.1 should be to make a commonsense judgment about the defendant's relative culpability given his status in the criminal hierarchy." *House*, 883 F.3d at 724 (internal quotations and citations omitted).

"When considering a challenge to an enhancement under § 3B1.1 of the Guidelines, we review *de novo* whether the

factual findings of the district court adequately support the application of the enhancement." *United States v. Craft*, 99 F.4th 407, 414 (7th Cir. 2024). But "[w]e review the underlying factual findings for clear error," *id*., "accord[ing] 'great deference' to those findings," *United States v. Beechler*, 68 F.4th 358, 368 (7th Cir. 2023) (quoting *United States v. Lundberg*, 990 F.3d 1087, 1097 (7th Cir. 2021)). "[F]actual findings at sentencing need only be supported by a preponderance of the evidence." *Beechler*, 68 F.4th at 368. "We reverse a district court's application of a sentencing enhancement 'only if we are left with a definite and firm conviction that a mistake has been made.'" *Id*. (quoting *United States v. Lovies*, 16 F.4th 493, 504 (7th Cir. 2021)). And because the difference between the organizer or leader enhancement and manager or supervisor enhancement is often a close question, "we give considerable deference" to the district court's decision as to which of the two enhancements is the better fit. *United States v. Jones*, 56 F.4th 455, 494 (7th Cir. 2022).

The district court applied a four-level leadership enhancement, reasoning that the record reflected that Pugh acted as a joint venturer with Mason in the drug conspiracy and "was involved in overseeing the obtaining of wholesale quantities of the drugs," "directing the activities of others," "mixing th[e] narcotics," and "repackaging" the narcotics for sale. The district court did not clearly err in reaching these factual findings, which were sufficient for the district court to apply the leadership enhancement.

Although Pugh argues his relative culpability paled in comparison to Mason's, we fail to find the district court's joint-venturer conclusion to be clearly erroneous. Rather, the district court's conclusion finds support in multiple

conversations between Pugh and Mason which reflect collaboration and indicate that the two were on relatively equal footing in the organization. To that end, we emphasize that more than one person may qualify as a leader or organizer of conspiracy. U.S.S.G. § 3B1.1, cmt. n.4. Accordingly, that Mason was a leader does not foreclose Pugh from being deemed a leader as well. To the contrary, the district court could reasonably find that Pugh's conversations and coordination with Mason indicated that Pugh and Mason were similarly situated within the hierarchy of the organization, thereby supporting the district court's conclusion that Pugh acted as a leader.

Likewise, the district court did not clearly err in finding Pugh exercised control over the conspiracy when he directed others. The district court found Wiltz credibly testified that Pugh had told him "where to go" to conduct a drug sale, told him "what to do", and directed him on obtaining supplies necessary for the drug business. Wiltz further reported that Pugh was one of the individuals he would "bring [money] back to." The trial evidence also reflects that Pugh directed two other co-conspirators, Ryan Pearson and Alvin Williams, by instructing them on various occasions to weigh drugs and report that weight back to him. Because "giving orders" is a "characteristic consistent with someone in a leadership role," the district court properly found this evidence relevant. *United States v. Longstreet*, 567 F.3d 911, 926 (7th Cir. 2009) (emphasis omitted). And that Pugh did not "exercise complete dominion over every member of the enterprise at all times" does not foreclose a finding that the enhancement should apply. *United States v. Garcia*, 948 F.3d 789, 806 (7th Cir. 2020).

As the district court's factual findings were not clearly erroneous and adequately supported application of the enhancement, we affirm the district court's application of the leadership enhancement.

### III.    CONCLUSION

For these reasons, we AFFIRM.